UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SHIELDING INTERNATIONAL, INC.,
an Oregon corporation,

        Plaintiff,

Civ. No. 05-709-HA

OPINION AND ORDER

    v.

OAK HARBOR FREIGHT LINES, INC.,
a Washington corporation,

        Defendant.

HAGGERTY, Chief Judge:

On July 19, 2005, Shielding International, Inc. (Shielding) filed an Amended Complaint against Oak Harbor Freight Lines, Inc. (Oak Harbor), alleging freight damages pursuant to 49 U.S.C. § 14706 (the Carmack Amendment). On February 17, 2006, Shielding filed a Motion for Summary Judgment [17] in the instant matter. On February 21, 2006, Oak Harbor also filed a Motion for Summary Judgment [22]. The court heard oral argument regarding the these motions on July 24, 2006. For the reasons set forth below, Oak Harbor's Motion for Summary Judgment is DENIED and Shielding's Motion for Summary Judgment is GRANTED.

1 -- OPINION AND ORDER

**FACTUAL BACKGROUND**

Plaintiff Shielding manufactures and distributes x-ray protective apparel and other items for protection against radiation exposure.  is an Oregon corporation whose only facility is located in Madras, Oregon. Defendant Oak Harbor is a trucking company, located in the state of Washington, which transports freight through interstate commerce.

**The Damaged Shipment.**

On January 20, 2005, Shielding tendered a shipment of freight to Oak Harbor at Madras, Oregon for transportation to Largo, Florida. The bill of lading described the shipment as one crate, weighing 3,070 pounds, consisting of "plastic sheeting, not printed, in flat sheets or tubes, not further processed, Item #156830 sub 1" and labeled as "Class 55." Oak Harbor had previously approved this commodity description and class for Shielding's freight. Oak Harbor delivered the freight to Largo, Florida in a damaged condition. Oak Harbor admits that it is liable to Shielding for the damage to the shipment.

**Oak Harbor's Assertion of Limited Liability Pursuant to OAKH 100.**

Although Oak Harbor admits that it is liable for the damage to Shielding's freight, it asserts that its liability is limited to $2.00 per pound, for a total of $4,782.00, pursuant to a provision contained in Oak Harbor's tariff OAKH 100.

In March 2004, Oak Harbor's representatives, David Vander Pol and Mike Maxwell[1], met with Shielding's representatives, Susan Kovari and Doug Lofting[2], at Shielding's Madras facility

---

[1]Vander Pol and Maxwell are, respectively, Oak Harbor's President and "Bend Terminal Manager."

[2] Kovari and Lofting are, respectively, Shielding's C.E.O. and Vice President.

2  -- OPINION AND ORDER

to view its products and facility and solicit Shielding's freight. Although Vander Pol and Maxwell discussed pricing with Kovari and Lofting during that meeting, neither made any mention that Oak Harbor's liability would be limited in any way.

Oak Harbor's Pricing Agreement was dated effective April 1, 2004. Maxwell did not review the Pricing Agreement with Kovari or any other representative of Shielding. Rather, Maxwell left the agreement in Kovari's office with preprinted bills of lading and calendars. Maxwell did not follow up with Kovari to confirm her receipt of the Pricing Agreement prior to the damage to the January 20, 2005 shipment. The Pricing Agreement was never signed by anyone at Shielding as it was Oak Harbor's policy to not have such agreements signed by customers.[3]

Oak Harbor subsequently issued Pricing Agreements on September 24, 2004 and December 20, 2004, slightly modifying its prices. The subsequent pricing agreements, however, were never delivered to, reviewed with, or signed by Shielding. Moreover, none of the Pricing Agreements mentioned any limitation of liability or offered Shielding a choice of rates for different liability levels. The Pricing Agreements incorporated OAKH 100. OAKH 100 establishes a limitation of liability of $2.00 per pound on Class 55 freight. OAKH 100 does not offer a choice of rates for different liability levels. None of Shielding's representatives was provided with a copy of OAKH 100 until after the January 20, 2005 shipment was damaged.

---

[3] The court notes that defendant does not base its argument regarding limited liability on the aforementioned Pricing Agreement. These facts are recited solely to provide relevant factual background. Defendant's limited liability argument is based on its tariff OAKH 100 which is referenced in its standard bill of lading.

3 -- OPINION AND ORDER

**STANDARDS**

A party is entitled to summary judgment as a matter of law if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact." Fed. R. Civ. P. 56©); *see Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991). The moving party carries the initial burden of proof and meets this burden by identifying portions of the record on file that demonstrate the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986). Once the initial burden is satisfied, the burden shifts to the non-moving party to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. *Id.*

The court must view the evidence in the light most favorable to the non-moving party. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir. 2000) (citation omitted). All reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. *MetroPCS, Inc. v. City and Co. of San Francisco*, 400 F.3d 715, 720 (9th Cir. 2005) (citation omitted). Where different ultimate inferences may be drawn, summary judgment is not appropriate. *Sankovich v. Ins. Co. of N. Am.*, 638 F.2d 136, 140 (9th Cir. 1981) (citing Fed. R. Civ. P. 56 ©)).

Deference to the non-moving party does have limits. The non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The "mere existence of a scintilla of evidence in support of the [non-moving party's] position would be insufficient." *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 252 (1986). Therefore, where "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475

U.S. 574, 587 (1986).

**DISCUSSION**

The Carmack Amendment regulates motor carrier liability for damages sustained to cargo or freight during interstate shipping. 49 U.S.C. § 14706(a)(1). Pursuant to the Carmack Amendment, motor carriers generally assume absolute liability for ". . . actual loss or injury to the property caused by [the carrier]." *Id*; *see also Sassy Doll Creations, Inc., v. Watkins Motor Lines, Inc.*, 331 F.3d 834, 838 (11th Cir. 2003); *Carmana Designs Ltd. v. N. Am. Van Lines, Inc.*, 943 F.2d 316, 319 (3rd Cir. 1991). Limitations of liability are carefully defined exceptions to the general rule of full liability. *Emerson Elec. Supply Co. v. Estes Express Lines Corp.*, 451 F.3d 179, 186 (3rd Cir. 2006)(*quotation and citation omitted*). In order to effectively limit its liability, a motor carrier must satisfy the following four requirements, hereinafter referred to as the Hughes requirements:

> (1) maintain a tariff in compliance with the requirements of the Interstate Commerce Commission; (2) give the shipper a reasonable opportunity to choose between two or more levels of liability; (3) obtain the shipper's agreement as to [its] choice of carrier liability limits; and (4) issue a bill of lading prior to moving the shipment that reflects any such agreement.

*Hughes Aircraft Co. v. N. Am. Van Lines, Inc.*, 970 F.2d 609, 611-12 (9th Cir. 1992); *see also Carmana Designs Ltd.*, 943 F.2d at 319; *Norton v. Jim Phillips Horse Transp., Inc.,* 901 F.2d 821, 827 (10th Cir. 1989).

**I.    Oak Harbor's Bill of Lading and OAKH 100 Fail to Limit Liability.**

Limiting liability pursuant to the Carmack Amendment requires that a carrier satisfy each of the *Hughes* requirements. With regard to the second *Hughes* requirement, carriers are required to offer shippers at least two shipping rates with corresponding liability options in order

for a liability limitation to be valid. *Emerson,* 451 F.3d at 187.

Here, Shielding argues that Oak Harbor is liable for the full amount of the damaged cargo because Oak Harbor failed to satisfy several of the *Hughes* requirements. Primarily, Sheilding contends that Oak Harbor failed to satisfy the second requirement set forth under *Hughes* because neither its bill of lading nor tariff OAKH 100 offered more than one liability option. This court agrees.

Oak Harbor conceded in its submissions and during oral argument that neither its bill of lading nor tariff OAKH 100 explicitly offered Shielding a choice of rates for different liability levels. Rather, Oak Harbor argues that it satisfied the second *Hughes* requirement because it had procedures in place which could have allowed Shielding to choose between different liability levels had Shielding chosen to inquire about such procedures. The record reveals that Oak Harbor never mentioned these procedures to Shielding until after the cargo damage occurred. Merely having procedures in place, without bringing those procedures to Shielding's attention, was insufficient. Under *Hughes* and the other applicable case law, Oak Harbor bore the burden of offering Shielding the choice between different liability levels.

Alternatively, Oak Harbor suggested during oral argument that this court's prior opinion, *Travelers Property and Cas. Co. v. Interstate Heavy Hauling, Inc., et al.*, No. 98-1279, 2000 WL 900482 (D. Or. Feb. 16, 2000), established that shippers are responsible for inquiring about liability levels. This is incorrect. In that case, this court held that shippers should have the ability to choose from different liability levels provided to them by carriers in accordance with the *Hughes* requirements.

Oak Harbor's failure to provide Shielding with choices of different liability levels

precludes any argument that it satisfied the second *Hughes* requirement or effectively limited its liability under the Carmack Amendment.

## II.     Oak Harbor's Course of Dealing Cases are Inapplicable.

Additionally, Oak Harbor's assertion that its extensive course of dealing with Shielding was sufficient to establish a valid liability limitation is rejected.  Oak Harbor contends that there is authority that supplements *Hughes* and allows an established course of dealing relationship between a shipper and a carrier to limit liability where the *Hughes* requirements are not met.  *see e.g. Ins. Co. of N. Am. v NNR Aircargo Service (USA), Inc.,* 201 F.3rd 1111 (9th Cir. 2000*).*

Oak Harbor's reliance on *North America* and other non-Carmack Amendment cases to support its argument is misplaced.  The court in *North America* explained that the Carmack Amendment was inapplicable because the shipping took place intrastate.  *Ins. Co. of N. Am.*, 201 F.3d at 1115.  The court did not apply the *Hughes* requirements, as this Court must in the instant case.

## CONCLUSION

For the reasons discussed above, Plaintiff's Motion for Summary Judgment [17] is GRANTED.  Defendant's Motion for Summary Judgment [22] is DENIED.

The court grants plaintiff twenty days from the date of this order to submit to the court a Proposed Judgment which itemizes its actual losses stemming from its damaged shipment.

IT IS SO ORDERED.

Dated this 1    day of August,  2006.

                                                  /s/Ancer L.Haggerty
                                                ANCER L. HAGGERTY
                                            Chief U. S. District Court Judge